Okay, welcome to day two of the morning InBank panel. We have three cases to argue. We call today, Mr. Pidone. Richard Pidone Good morning. May it please the court, I'm Richard Pidone on behalf of the appellant, Gary Magnus, and the Magnus Parties. Mr. Magnus is with us here today. Your Honor, the receiver stands here today in the shoes of the perpetrator of the fraud. I stand here representing the Magnus victims who had no actual knowledge of the fraud that was perpetrated by the ones in whose shoes the receiver stands. There has been no finding that my client acted in bad faith. My clients have been ordered to return $79 million plus interest on that $79 million plus attorney's fees. All that the uniquely situated Magnus Parties ask for today is a remand to the district court so that there may be a full determination of their set-off rights, in contrast with the abbreviated decision that the district court made, and it was in error. This is exactly the relief that was granted to Mr. Hagstrom by the 11th Circuit in the Elliott case, also involving a Ponzi scheme. The district court— The reason the Elliott was very much determined on its facts, as I think this determination so far has, do you read an absolute right to a set-off, separate proceedings from the Elliott case? We do, Your Honor. The district court here abused its discretion when it made multiple errors of fact and law. First, in a sweeping conclusion that prejudiced and infected every other part of the decision, the court concluded that set-off rights of the sort that the Magnus Parties are asserting are incompatible with equity receiverships in federal court. That error is clearly shown by the contrast with the Elliott case. Second, the court made a factual error when it determined that the Magnus Parties stand before the court with something that is not supported by the record. And third, the court incorrectly applied Texas set-off law, citing Tukok instead of going into an analysis of the right as described in the Bonham case. These legal and factual errors are well highlighted by what the court did in Elliott. There, Mr. Hagstrom sought a specific determination of his set-off rights. Like here, the receiver in Elliott refused to provide Mr. Hagstrom with set-off rights, and the argument was that it would improperly prefer Mr. Hagstrom over other creditors. That's the essence of one part of this Court's decision, that if Magnus Parties were granted set-off rights, it would be unfair and preferential to other creditors. Elliott stands squarely for the fact that that is not a proper determination. And the law that Elliott walks through, and I would note that Elliott was favorably cited by the receiver for the proposition that summary proceedings may be used for certain parts of receiverships, but the district court completely ignored the detailed analysis of set-off. Elliott specifically stated that the receiver's argument with regard to preference, with regard to the preference issue, was rejected by the Supreme Court for over a century. As early as 1892, the United States Supreme Court recognized that a debtor with a right to set-off, that is not a preference with regard to other creditors. The Court also noted in Elliott that it is practically a presumption in favor of set-off. Set-off is not to be determined against a party in a cavalier manner. And importantly, the burden is on the party seeking to disallow set-off, and that did not take place here. Elliott makes clear that the goal of obtaining administrative efficiency in a receivership cannot be obtained at the expense of a party's substantive rights. The district court here erred when it made sweeping determinations and applied a bright-line rule contrary to the facts. Substantive rights of set-off may not be disallowed. The fact that during the limited trial, the Magnus Parties did not establish tough-to-good faith does not mean that the Magnus Parties acted in bad faith or have unclean hands. It is on the receiver, in a proper proceeding, to meet that burden to have the set-off rights disallowed. The district court here incorrectly concluded that the Magnus Parties had unclean hands. There's no citation in the receiver's brief to a finding of unclean hands. May I ask you, you maintain that you're not relying on any statutory authority as such. You maintain that the set-off right is grounded in Texas law? Yes, Your Honor. Would you expound on that aspect and how that was dealt with in the district court? In Bondle v. Beadle, a 1991 case decided nearly 75 years after the Cockates, which is cited by the district court, the Texas Supreme Court expounded on set-off, and it stated that a set-off is grounded in Texas law whenever A owes B and B owes A, much as the Supreme Court discussed it in Strumpf. And the court explained in detail the policy behind set-off, which is if a party, such as Mr. Magnus, may have a right to recovery from another party, the receiver, and the receiver can't pay in whole dollars, it would be fundamentally unfair for Mr. Magnus and the Magnus Parties to be required to pay in full and never have an opportunity to recover. A separate proceeding is completely appropriate for determining how the two obligations are adjusted against each other. In the Bonham case, the bank was owed approximately $1.6 million. Mr. Beadle, in fact, his lawyer who was an assignee of the claim, was owed $75,000. The court held that it would be unjust and the bank should have a set-off right and not be obligated to pay in full to Mr. Beadle when, in fact, Mr. Beadle was not going to have the resources to pay the bank in full, and that provides for the set-off. Your Honor, in the receiver's brief and in the Cocke case, it cites the Cocke case as dispositive on the issue of set-off. But if one looks at the Cocke case, what you can see is it is a matter of an equity interest in a building and loan association and whether that should be set-off against a monetary obligation that Mr. Cocke had to the building and loan association. And the court concluded that set-off in that circumstance was inappropriate. And if you look at all of the cases that Cocke cites with regard to set-off, they also involve building and loan associations where it speaks in terms of a membership interest may not be set-off against the claim. One last question. I read Bonham, but I'll re-read it in light of your argument. But I thought the two main issues in there were kind of procedural. One, whether or not declaratory judgment was the proper procedural vehicle for dealing with set-off, and the other was a venue. Actually, those were the two principal holdings, if you will. Obviously, they talked about set-off, but I'm saying given that we don't have either of those issues, declaratory judgment or venue there, I guess I'd say what's the driving set-off principle that comes out of the case since those weren't the main . . . The issue we have here is not the issue in that case. I mean, it's there. I get it. But I thought, and maybe I misapprehended, that there was a big issue about whether declaratory judgment action was a proper procedural mechanism to deal with this, and a venue issue in that that's what they go on. So, just help me one last time to . . . Certainly, Your Honor. So, I believe Bonham is most important because it's the most detailed explanation of the policy and the purpose behind set-off, and it describes it as a right, not a permissive thing. It's a right in Texas. So, that's the most important . . . Is it a right or is it an affirmative defense? I'm sorry, Your Honor. Is it a right or an affirmative defense? So, set-off is a right which may be raised as an affirmative defense, may be raised in a declaratory judgment action, may be raised in a counterclaim, but it is a right that can be utilized, and this is to come directly to your question, that can be utilized any time the two parties owe each other money to reduce the competing claims to a result. And importantly, while the district court here did not decide on waiver, the receiver in his papers has made much of the issue of whether or not the Magnus parties waive their rights. Bonham stands squarely for the fact, as late as a declaratory judgment action, after the two parties' claims have been resolved against each other, you may have set-off, and that would be another important part of what I would say the . . . Excuse me, the word . . . I've heard the word Bonham again, so finish the judge's question. I was only going to say that's an important part of what the Bonham case stands for. Thank you. It seems to me, regardless of how set-off was handled, that you're talking about and the relevance of Bonham, it seems to me an equally, if not more serious concern is that you already had an opportunity to address set-off, and that was in the trial that was going on, and looking at good faith, you had a jury trial, went up to our court, we got the Texas certified question. It seems to me that was your opportunity, and you're now raising something that you did raise in that case. I would say waived in the sense of cautiously withdrew it, and that was the proper place to do it, and under the mandate rule, when it comes back and you get into the new issues that were just resolved a few years ago, the panel of whether attorney's fees, interest can be added, all that's been dealt with, so help me with why that other case that you had a trial on where set-off could have been an issue doesn't mean it's too late now. Certainly. Here I would again come back to Bonham, which speaks squarely to the issue of timing of when parties may raise set-off under Texas law, but more importantly, here the set-off was articulated as an affirmative defense in this case. It was not waived . . . You say in this case, in the case that went to trial. We're here today on a consolidated proceedings, but in the case that went to trial. Wasn't an issue, I don't know if it was at the time of some sort of pretrial order, whatever, at some stage it was withdrawn and no longer being pursued. It was not withdrawn, Your Honor. If we were to go and take a look at the record where the judge's pretrial order . . . It wasn't an issue for the jury, was it? It was not, because the judge ordered that there would be a trial on good faith. We proceeded to set up a trial on good faith. The receiver moved in limine not to strike, not for summary judgment, but in limine to keep evidence of set-off from going to the jury, and that was the limited stipulation was to keep evidence of set-off from going to the jury. There were no exceptions to that. It was set aside, and then it was raised again as soon as the Supreme Court ruled that it would not take the case, denied cert, at that point within hours, we filed our motion to exercise our set-off rights, and that is squarely in keeping with Bonham. Your insistence that in federal court, subject to federal procedures, that you're allowed to bifurcate issues that could be considered at the same trial, and I don't get any pushback from the judge. You know how all that played out, but I just know I didn't go to the trial. It could have been an issue for the appellate court that you were not allowed to seek set-off. I just don't think you can reserve issues like that. Help me with, regardless of what Bonham says, why in federal procedure you can leave out an issue that could have been tried and say we'll try it at a later time. Respectfully, Your Honor, Bonham speaks squarely to a judgment may be set-off against a judgment, and it says squarely under Texas law, one party may elect not to raise the issue below in one judicial proceeding, and set-off is still proper. That is absolutely the issue before Bonham, and if this court were to say we're not sure the Texas law requires that in a talk to action, then the appropriate remedy is to send this to the Texas Supreme Court for determination of that legal issue. Yet again, huh? I just said yet again. Certified question, yet again. It would be a different question, Your Honor, and yes, there's a lot at stake in this action, and the receiver has a lot at stake, and we have, frankly, a party and my client with the means to address the issues. Your Honors, I want to address an important overarching policy question here, and it goes to the equity argument that the receiver raises. The receiver argues that there would be unfairness in permitting set-off rights, and the receiver asks for a freewheeling environment where receivers can raise equitable defenses. We have a system in our Federalist country established in the Constitution, the bankruptcy clause of the Constitution, Article I, Section 8, Clause 4, gave Congress the power to deal with issues such as this where federal law may interfere with state law involving insolvencies, and we have a code in the form of the bankruptcy code and specific rules that provides for what can happen with a set of fair rules. We're here to you today on an equitable receivership with ill-defined rules where the receiver is attempting to interfere with a substantive right, and the Article I, Section 8 exists because you can't interfere with substantive rights without Congressional action, and I would say authorized by the Constitution, and that receiver does not have the power. And if you were to look back at receiverships in the 1800s and when equitable powers were carried over, that would be clear. My clock is about to run out, Your Honors. I could go on, but I won't. All right. You've reserved your rebuttal rights. Thank you. Thank you. All right. We'll hear from the receiver. Thank you. Good morning. May it please the Court. My name is Stephanie Kenyart, and I represent the appellee receiver, Ralph Janvey, today. The Magnus parties are asking this Court to overturn the decision below and to allow Magnus to prosecute a new lawsuit 13 years into this litigation that would allow Magnus alone to skip the court-approved claims process and sue the receiver on claims arising from CDs, allow Magnus alone to enforce a void CD and claim millions of dollars in fake interest, allow Magnus alone to recover every penny of his claim while other defrauded investors recover a prorata share, and allow Magnus alone to recover distributions on a claim he has never filed. Magnus argues that this preferential treatment is justified because there's a judgment against him, a judgment that requires him to return money to the defrauded investors because when he took Stanford's money, a jury found that he was on inquiry notice that it was a Ponzi scheme and defrauding other investors. Magnus wants the court to allow him to set off that judgment for real money with millions of dollars in fake interest that will come from those defrauded investors' pockets. The district court, in its own words, refused to countenance this inequitable outcome, and this court should, too. Magnus' appeal is built on a series of false premises, and if any one of them falls, then so does the appeal. Judge Southwick, you asked about waiver in this case, and it is clear that setoff was pleaded as an affirmative defense and is long waived. We are now . . . My friend on the other side was talking about the procedure that was followed by the district court at that trial. When did it get removed? I got the impression that the view of the other side is that this somehow was a reserved issue for being dealt with after the appeal, which is the way I saw it. Tell me what happened in the district court as you see it that caused that issue to fall out. Of course. Magnus had pledged setoff as an affirmative defense. The receiver entered his motions in limine and argued setoff should not be presented to the jury. A setoff claim is a claim against the receiver and must go to the claims process. The parties stipulated it wouldn't go to the jury, and Magnus did not include setoff in the joint pretrial order or follow-up actually reserving the right to present it. But even if . . . What should Magnus have done at that stage once his agreement wouldn't go to the jury? I think if Magnus' position was that this was . . . setoff was an issue that still had to go to the judge, Magnus had to seek leave to bring a setoff claim. Nothing prevented him from doing that. Our position was this doesn't go to the jury because it belongs in the claims process, and the bar date order as well as the litigation stay requires you to obtain leave to bring a setoff claim. Magnus instead just didn't pursue his claim. And then the history follows even further. So Magnus claims that he didn't have a reason to present setoff until he lost the case. And Judge Southwick, as you pointed out, that cannot possibly be how affirmative defenses work. But after this court entered judgment against Magnus, the case was remanded to the district  The parties fought over and fully briefed before final judgment was entered. Setoff wasn't mentioned. Magnus appealed the final judgment to this court. He told this court he wasn't disputing he owed the $79 million. He didn't mention setoff to this court. You're talking about the proceedings that resulted in an opinion a month or two ago. Yes, in September. But then Magnus obtained a bond from the district court.  As it points out in its order, that he would not protest having to pay the money once the appellate process was complete. Setoff only came up after that, five years and two appeals after the litigation. And it is not the case that Bonham permits a new lawsuit for setoff. In Bonham State Bank, then Justice Owen explained that when there are two final judgments that instance alone, a declaratory judgment is available to set off the two final judgments. But the Supreme Court of Texas explicitly... Let me ask you... Yes, Your Honor. It's hard to be completely polite here. I'm sorry to interrupt. Absolutely. But it is true that Bonham Bito will say that a declaratory judgment action is an appropriate vehicle for the offset of two final judgments. Two final judgments. Well, Your Honor, the court goes on to say that this is not an instance where you have a situation with an affirmative defense or a compulsory counterclaim. That is different. And Bonham recognizes that. And in fact, when it comes to how setoff should be dealt with, the opinion from the Texas Supreme Court to look at is Brown versus American Transfer and Storage. And there the Texas Supreme Court held that because setoff is an affirmative defense, a party that had failed to plead and prove it at trial had waived it. And in his concurrence, then Justice Garwood said he would find that setoff had been pled, but because it hadn't been brought up and proven at trial, it was waived. This case is governed by Brown. Setoff has been waived. The next false premise that I'd like to discuss is the opening statement of my friend on the other side, that the receiver stands in the shoes of the fraudsters. This court has already said that is not true. That is the reason that the receiver was able to bring a fraudulent transfer claim. And this is very important to the equities and the technical requirements of setoff. The only reason that the receiver could bring a fraudulent transfer claim against Mr. Magnus that resulted in the judgment in question is because this court has held repeatedly, including in Jan V. V. Brown, Jan V. versus Democratic Senatorial Campaign Committee, that when the receiver steps in and takes over an entity, the fraudsters are gone. And as a result, the receiver is able to bring fraudulent transfer claims that can only belong to a creditor and never the fraudster in order to recover money for the estate and for all of the defrauded investors. That is a key point in this case because Magnus wants to set off a judgment that the receiver got on behalf of a defrauded creditor with money that he claims the fraudsters owe him. Now, the SEC v. Elliott was discussed a fair amount. And it is true that there are instances where other circuits have permitted setoff and inequitable receivership. But those cases are distinguishable on key grounds. In SEC v. Elliott, the Court of Appeals explained, as does every case that Magnus has cited for It's reviewed under abuse of discretion. And in making its discretionary decision, the district court is required to weigh the equities. So what happened in Elliott? In Elliott, the court found that Hagstrom had sold loans to Elliott and was owed money on those, or actually bonds to Elliott and was owed money. And in return, Elliott had lent money to Hagstrom. They had mutual debts. And so the Court of Appeals didn't even hold setoff was required. What it said was that in this instance, where Hagstrom was going to be forced to pay money when the other side of his bargain, the other side couldn't reciprocate because it was in receivership, that would be unfair. The Tenth Circuit looked at when it is appropriate to have setoff and equitable receiverships in FDIC v. Liberty National Bank. And it explains that when there are two mutual obligations that the parties have relied on and depended upon in their transactions and relationships, then just because one party is insolvent, it's not fair to force the other party to pay the entirety of its bargain. That's why that circuit allowed setoff in FDIC. In this case, there are no mutual obligations. There are no coinciding debts. Magnus has been ordered to return money that he never should have taken from the investors. And there is no case, no case, and no equitable principle that allows a fraudulent transferee to diminish, to reduce what he's required to pay back to investors based on a setoff claim against the frosters. The due process claims that are discussed throughout the brief, the due process cases, SEC v. Elliott, SEC v. Basic Energy, they all have to do with whether or not a party had an opportunity to be heard. And Magnus has had many opportunities. This is his fourth appeal to this court. He had a full trial on his fraudulent transfer claim. And when it comes to this specific instance, the district court had a full briefing. Magnus submitted 125 pages of evidence. He has not identified a single factual dispute that required more process. Magnus received the process he was due. On these grounds alone, on waiver and the lack of equity, both of which the district court acknowledged in its first opinion, it applied the mandate rule because of waiver, as you can see from its block quote of the case law. In its second opinion, it looked at the equitable principles. Both of those require affirmance of its order. But I would like to talk about . . . Before we leave there, the mandate rule has been an issue in more than one of these proceedings, including on the most recent decision, I suppose, by this court on adding to what we decided in 2020 and then entering final judgment, adding to what we had done on appeals. So the mandate rule really says things that necessarily were decided or could have been decided in the earlier proceedings were raised or could have been raised. And what the panel said last month, you tell me, rather than November, December, that these were not matters to be dealt with initially and were proper only after the judgment was final. So why doesn't some of that apply to what we're talking about? It seems like that would apply if, in fact, set off works in a way that your . . .  It's a mandate rule, and it can be reserved. So again, I disagree that under Bonham it can be reserved. I understand your argument, but all I'm saying is the mandate rule is subject to our agreeing, I think. So I think the district court was correct to apply the mandate rule. And the reason for it is that the mandate rule, as this court held in PSKA, it once it has ruled on the merits of the case, if there were issues relevant to that, that were waived in front of the district court, then that is blocked by the mandate rule. And in this case, affirmative defense was pled. Magnus never brought it up before the appeal started. The appeal decided liability, but even if again it were the case that somehow this affirmative defense remained live and available, there is no explanation Magnus has ever given for why he didn't bring it up on remand. The parties briefed to final judgment for weeks, and set off was never brought up. So I would posit regardless of how generous this court decides to be on a waiver and the mandate rule, five years and two appeals after trial is decidedly too late. Now, Magnus also repeats constantly that his set-off claim is valid, his main set-off claim for $58.5 million because no court has actually determined the Magnus party's CDs are void. That is untrue, and the lack of merit to a set-off claim is another reason why  Magnus claims that in 2009, he still had money left in the bank and said, and that somehow, even though Sib has been shut down for 14 years, that money has continued to emulate tens of millions of dollars in interest. Magnus claims he's entitled to all that $58 million because he has a contractual right to it. But Magnus made that exact same argument to this court in Jan V. Brown in 2014, and this court wrote in response to Magnus himself, the CDs issued by Sib are void and unenforceable. Now, Magnus now argues . . . Let me ask you about that. Yes, Your Honor. I did look back at Brown to see exactly what it meant. The investment was still his money, and the money still went to Stanford, and he was still entitled to make whatever claims subject to receivership perhaps. But by saying the CDs were void, it just means you have no rights to grow, no contractual rights to grow out of it. You have no right to interest. You have no right to whatever. Yes, Your Honor. You're still your money, but you're subject to other rules in trying to get it back. Is that what void meant? But Brown is a little bit broader than that, right? What Magnus would like to say is because I've said something is principal, at a minimum, I get that $14 million back because Brown only got rid of interest rights. That's not right. Yes, Brown does sometimes use the word principal because it makes sense, but what it says is that Ponzi scheme victims may have claims, quote, in the amount of their original investment. What Brown is about is to say you have given value for the money you put into the scheme. And so every dollar you got back up to the amount that you invested, you have a claim for, but you don't have a claim for anything else. Here's why that matters so much here and why there's no principal left. Magnus invested $79 million. He got a lot of interest at Ponzi scheme rates. In 2008, he took out 88.2. And yes, there was still $14 million left over because he got a lot of interest. Well, after Brown, he had to return all of his excess. And when he did that in 2015, he understood Brown. He returned 8.5 million and he held on to 79 million. He held on to every dollar he got back because Brown allowed him to continue fighting for that. Every dollar that was left over after that, everything outside of Magnus' $79 million in his pocket in 2015, that is excess. And under Brown, there is no claim for it. There's also no fraud claim for it because Brown disposes of that, too, on page 442, footnote 76. With a fraud claim, the Ponzi scheme victims have claims for damages and the amount of their original investment. Let me ask, if we were to agree with you, hypothetical, not a statement of fact, were we to agree with you, where does that leave Mr. Magnus going forward? The claims have not been processed in the receivership itself. Is he barred in any way from proceeding there? He is not barred. He will, you know, he will face some challenges because certainly his three remaining proofs of claim, the ones for the 14 million, they will be denied because that money is excess. It is barred under Brown. Now, his second claim for a set-off is that he wants to have distributions. His argument is, once I pay back the $79 million, or actually what he really wants is before he pays it back, to get the distributions that he would receive had he filed a $79 million claim with the receivership. Now, the deadline to do that passed 11 years ago almost. He was required to file any contingent claims at that time. He did not do so. He can still try. He can file a claim for the $79 million. He can explain to the district court why it's late. He can make his argument for why he should participate in distributions. But here's the thing, before this court, he's asking you to say that he automatically gets all those distributions. He hasn't even started the process. If you were to affirm the district court's opinion, then we would be in a position where if Magnus wants that second claim, he needs to file a claim just like everybody else. Get the receiver's determination. Get the district court to look at it. I hope we will not come back, but unfortunately, that can't be promised in this litigation. But I would say if this court looks at his first setoff claim and sees that its lack of merit was another ground on which the district court could deny the motion for leave, I think it would be beneficial to the efficiencies or lack of efficiencies of this case for this court to tell Magnus that. If there is no merit to the first setoff claim for $58.5 million, this is now as an alternative ground of affirmance. But finally, I do want to reach one last issue that setoff claims cannot be part of the claims and distribution process. As Magnus' own cases show, setoff claims can be part of the claims and distribution process. It's an equitable decision for the district court to make. But importantly too, this court has denied setoff in this very receivership. In SEC v. Sybil 465 Federal Appendix 316, Trustmark had a setoff claim. A setoff claim that the parties agreed had merit. It was entitled after paying one of Stanford's vendors to setoff the amount it had paid against cash collateral that Stanford held. This court found that the claim for setoff is a claim against the receiver. Those claims are properly in the claims and distribution process. It acknowledged that Trustmark would probably suffer an injury because in the claims and distribution process, you are not guaranteed to recover everything. But that did not outweigh the interest the receivership has in maintaining the estate. You raised in down the road the unclean hands notion of bar and counsel opposite pushback on that. Do you want to say anything else while you were leaving the podium about unclean? The district court didn't really make a finding about that, did it? I don't think that the district court made . . . I don't think that it was necessarily talking about unclean hands as an absolute bar. Of course it wasn't. It said that if Magnus wanted to proceed, it had to follow the claims process. But in that paragraph where the court mentions unclean hands, it was talking about the equities that I mentioned earlier. The reality in receivership is that everyone will get a portion of what they're owed. That's it. But Magnus, because he has a fraudulent transfer judgment against him, because he took money that he was not supposed to take and held it away from other defrauded investors, he is now using that as a sword to get setoff. And what setoff means in this case is that Magnus will be the only party to recover everything he's asking for and he's asking for millions in interest on top of it. So, I think that the district court's determination that this was not equitable and that there is an unclean hands issue, even if it isn't formally dispositive but weighs in the equities, was absolutely correct. All right. Thank you. Thank you. All right. Thank you. All right. Back to you, Ms. Spadone. Every dollar you have invested, you have a claim. That's my opposing counsel's statement and that's the holding in Brown. So, when the Magnus parties filed the request to have a 13-year-old injunction lifted, we articulated one theory as count two. Count one was lift the injunction to allow setoff proceedings to go forward. Count two specified a particular claim. If this were in bankruptcy, that claim for that amount would be statutorily allowed. While I understand the statement and would agree that these CDs are void, the reality is my client has a claim for, at the very least, principal, and if we were to imagine that Mr. Stanford was standing there instead of the receiver, we would say to ourselves, what does Mr. Stanford owe? At Texas law, Mr. Stanford owes a fraud damages claim, which equals the amount following rescission of the contracts, equal to the fraud damages, which is expectancy. And so the question is, where in American law is the receiver excused from giving us a claim for expectancy damages? How can the receiver, having admitted that every dollar you invested for, you have a claim, say that Mr. the Magnus parties do not have a claim? There are multiple theories that the Magnus parties have claims for and that should be litigated. The receiver cites to Scholz for a sweeping proposition that receivers are not bound. Scholz was a very narrow standing decision. It said, yes, Judge Posner said, yes, a receiver may bring a fraudulent transfer action and has standing to do it, freed of the fraud for purposes of standing only. It didn't abridge other substantive rights, and this is exactly the freewheeling problem here. If we take what the receiver just asked for under Scholz and we expand it, there will be no rules in receivership. We have an insolvency system in the United States that can address problems and where Congress acted, and it provides power flowing through the Constitution to do those things. The receiver does not have that. We may say we would prefer a more equitable system and allow receivers to have equitable power, but that lack of clear rules is not appropriate. What we are looking for is a remand to the district court for determination of our receivership rights. There is no factual finding of unclean hands. I'd like to turn to three orders which bar . . . it's not maybe Mr. Magnus can file a claim. Mr. Magnus is barred by raising the set-off issue. We're just looking for relief from a thirteen-year-old injunction. This is not like the Trustmark case, which was also a case about lifting an injunction and was decided a couple of years into the receivership, almost a decade ago or more. Now is the time to lift the injunction. Trustmark was not a final decision by this court on set-off rights. So we are . . . Mr. Magnus is barred by a preliminary injunction, which the receiver wrapped itself in when it asked for its motion in limine to keep evidence out and continued. So there was an order saying don't raise the issue. This is not waiver. Finally, that order continues today. Second, the bar process describes claims as . . . and remember, this is not bankruptcy where we have rules dictated by the Supreme Court that say this is what you will have a claim for. If we were there as a matter of statute, we would have a claim for the principle. Statutory claim for principle in bankruptcy. Absolute. We're not there. We have a bar order that entered two years before this litigation to say that Mr. Magnus missed the bar date for bringing a claim for amounts he's been ordered to pay back is preposterous. That date lapsed before this litigation. And the receiver and this court in Brown say Mr. Magnus, as someone returning principle, should have a claim for principle. And that's what we're looking for, an acknowledgment. Finally, there's an order that says as a litigant, Mr. Magnus can't have a distribution. So what the receiver says is go back out into the wilderness of my equitable receivership and bump into the bar order again and bump into the injunction against exercising set off and bump into the order that I stuck into the distribution process. And you have no rights and that is a substantive due process violation, a procedural due process violation. Mr. Magnus has no rights today to have his issue heard and that is what we are looking for. It is a mechanic to have those rights determined and there is no reason this district court can't hold a hearing and actually back up its decision on unclean hands and other matters with evidence and a record. And Mr. Magnus should not be deprived of that in a matter that approaches $200 million. Thank you. Thank you, sir. Thank you both sides for briefing.